IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINA BARONI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 3738 |
| v. ) | |
| ) | Magistrate Judge |
| VIOX SERVICES, INC., ) | Maria Valdez |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Tina Baroni filed this negligence action against U.S. Bank and its maintenance supplier, Viox Services, Inc. ("Viox") for an injury she sustained after a fall in the bank's lobby. Following a settlement, U.S. Bank was dismissed as a defendant. This matter is now before the Court on Viox's Motion for Summary Judgment [Doc. No. 112]. For the reasons that follow, Viox's motion is granted.

## FACTS[1]

Plaintiff is a former employee and longtime customer of a branch of U.S. Bank located in Rosemont, Illinois. (LR 56.1(a)(3) ¶ 1.) She worked at the bank for nineteen years before retiring in 2000. (*Id.* ¶ 2.) On February 5, 2011, she went to the bank for banking purposes. (*Id.* ¶ 59.) She had noticed on prior visits to the bank that the lobby carpet was worn, for at least five years prior to 2011, duct tape

---

[1] Unless otherwise noted, the following material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000).

had been used to repair the carpet. (*Id.* ¶¶ 49, 60; LR 56.1(b)(3)(C) ¶ 70.) At some point prior to February 5, 2011, the bank's Branch Manager Doug Karlic received a promotional U.S. Bank rug, which he placed on the torn carpet for marketing purposes, not safety. He reasoned that it had the most visibility in the teller area. (LR 56.1(a)(3) ¶¶ 44-45, 48, 50-51, 53.) He alone made the decision about the placement of the rug. (*Id.* ¶ 52.) Promotional rugs are usually put near a bank's front door so that customers can see it as they enter. (LR 56.1(b)(3)(C) ¶ 83.)

During her February 5 visit, Baroni noticed the promotional rug on top of what she knew to be a very worn part of the carpet. (LR 56.1(a)(3) ¶ 62.) When she entered the bank, she walked over the rug, which was laying flat on the ground and was not bunched or curled, and had no trouble walking to the teller area. (*Id.* ¶¶ 63-64.) When she left, however, Baroni tripped over the rug and fell on the floor. (*Id.* ¶ 65.) She believes that she tripped over the edge of the rug. (*Id.* ¶ 66.)

U.S. Bank operated, managed, maintained, and controlled the bank's premises. (*Id.* ¶ 3.) Defendant Viox is a maintenance company that was contracted by the bank to perform certain maintenance services.[2] (*Id.* ¶ 4.) During the relevant time frame, Patrick Heatherly was the bank's property manager, and he reported to Mary Molloy, the regional real estate manager. (*Id.* ¶¶ 5, 7-8.) Heatherly served as

---

[2] Neither of the parties' statements of fact discuss the basis for federal jurisdiction in this case, but Plaintiff is a citizen of Illinois and the Court takes judicial notice of the fact that, according to the Illinois Secretary of State, Viox Services, Inc. is an Ohio corporation with a principal place of business in Ohio. The removal notice established that U.S. Bank is a Delaware corporation with its principal place of business in Minnesota. Accordingly, jurisdiction is proper pursuant to 28 U.S.C. § 1332.

the liaison between Viox and the bank. (*Id.* ¶ 6.) Bank Property Managers were responsible for overseeing the bank, including making sure the premises were clean and safe. (*Id.* ¶ 9.)

Viox was responsible for building maintenance such as electrical repairs, light bulb replacement, plumbing repairs, and HVAC. (*Id.* ¶ 16.) Certain other responsibilities, including replacing or repairing carpet, were outside the scope of Viox's work. (*Id.* ¶¶ 17-18.) Accordingly to Heatherly, the Bank Property Manager, he would contract with a separate carpet company, not Viox, to handle carpet repairs, and Molloy admitted that carpet replacement was the responsibility of the bank, not Viox. (*Id.* ¶¶ 19-20.)

Viox would evaluate conditions in the bank, make minor repairs, notify the Bank Property Manager of any problems, and make recommendations. (*Id.* ¶¶ 13-15.) A Viox employee generally went to the bank on a monthly basis, using a checklist to review the premises, and the inspection reports were uploaded to a website for Bank Property Managers to view. (*Id.* ¶¶ 11-12; LR 56.1(b)(3)(C) ¶ 86.) Bank employees also had access to a work order system and could contact the Bank Property Manager to report any issues. (LR 56.1(a)(3) ¶ 23.) After receiving a work order from the system, the Bank Property Manager would dispatch Viox, who would either accept the order or decline it as out of scope of Viox's responsibilities. (*Id.* ¶¶ 24-25.) If the work order was accepted, Viox would address the problem and close the work order. (*Id.* ¶ 26.)

On June 21, 2010, Federico Meza, a mobile mechanic employed by Viox, completed a checklist in which he noted that the carpet in the teller area was in bad shape and needed replacement. (*Id.* ¶¶ 10, 27.) He recommended replacing the carpet, but carpet replacement was not within Viox's responsibility. (*Id.* ¶ 28.) At some point in June 2010, Meza repaired the carpet with glue. (LR 56.1(b)(3)(C) ¶ 72.) Meza completed another checklist on August 10, 2010, again noting that "teller area carpet is very bad!". (LR 56.1(a)(3) ¶ 29.) On September 8, 2010, Meza's checklist stated that the carpet needed to be updated, the general condition was bad, and the mats were dirty, and his October 5, 2010 checklist repeated that the carpet in the teller area was "very bad." (*Id.* ¶¶ 30-31; LR 56.1(b)(3)(C) ¶ 74.) Meza testified that he would have reported on the carpet, but after doing so, it was not Viox's responsibility. (LR 56.1(a)(3) ¶ 46.) He also stated that he would not have used duct tape to repair the carpet, because glue would be better. (*Id.* ¶ 47.)

Eric Alcozer, another Viox mobile mechanic, completed checklists dated December 13, 2010 and January 14, 2011, but he did not note any carpet condition issues in either checklist. (*Id.* ¶¶ 32-33; LR 56.1(b)(3)(C) ¶ 75.) He noted "good" in the flooring part of the checklists as to the general condition, mats, and no trip hazards. (LR 56.1(b)(3)(C) ¶ 76.) After January 14, Alcozer did not return to the bank until February 8, 2011, when he conducted a preventative maintenance examination. (LR 56.1(a)(3) ¶ 34.) Alcozer testified that he could not recall having anything to do with the carpet at the bank, and he also did not remember any problems with the carpet. (*Id.* ¶ 35.) He stated that if he had seen duct tape or a

tear on the carpet, he probably would have called Meza to have a carpet tradesman come in and repair it. (*Id.* ¶¶ 36, 41.) Alcozer also testified that all of the banks he serviced had runners in them, but an outside company took care of most of them. (*Id.* ¶ 38.) He would not have looked under a runner. (*Id.* ¶ 39.)

On January 19, 2011, the bank's Assistant Branch Manager Svetlana Light prepared a work order stating: "big tear in carpet. Currently has a tape over it, in lobby area exposed to customer traffic. Creates danger of people falling." (*Id.* ¶¶ 41-42.) The work order was assigned to Heatherly, and it was later deemed completed and closed, but what action, if any, was taken in response to the work order is unknown. (*Id.* ¶ 43.)

Light and Hirut Tesfu, another bank employee, testified that the bank received no complaints about the condition of the rug on top of the carpet before February 5, 2011, nor did any employees or customers complain that it was a trip hazard. (*Id.* ¶¶ 54-58.)

Among the areas included in the Services listed in Viox's contract with the bank are to:

> Repair and maintain flooring . . . [Viox] shall:
>
> – Remedy any defect that may create a safety hazard . . . .
>
> – Install, maintain, and replace safety or accessibility features, including but not limited to stairway skids, no-slip vestibule flooring and mats . . . as required.

(LR 56.1(b)(3)(C) ¶ 85.)

Areas of carpet maintenance included in the Services are:

– Glue-down carpet tiles

– Area rugs

– Wall-to-wall carpeting

– Broadloom carpeting

(*Id.* ¶¶ 73, 85.)

With regard to the section "Maintain and repair carpeting, non-capital purchases," the relevant Services are:

– Repair and minor replacement of flooring as appropriate to service levels.

– Safely tape down or cover any gaps or snags that are not repaired.

(*Id.* ¶ 85.)

Plaintiff's expert, Dr. Gary Bakken, testified that the rug represented a change in vertical and presented a trip hazard. (*Id.* ¶ 84.) According to Bakken, Viox had the opportunity to identify the rug as a trip hazard and to make the required action to eliminate any such hazard. (*Id.* ¶ 79.) Bakken acknowledged that there is no evidence that Viox applied duct tape over the tear in the rug or that Viox placed the rug over the tear. (LR 56.1(a)(3) ¶¶ 67-68.) Bakken's report also did not discuss whether Viox had any knowledge of a trip hazard caused by the rug prior to Plaintiff's fall. (*Id.* ¶ 69.)

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003)). Finally, the Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

## II.    COUNT II – NEGLIGENCE[3]

To prove her claim of negligence, Plaintiff must show: "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Buechel v. United States*, 746 F.3d 753, 763-64 (7th Cir. 2014). Defendant argues that summary judgment should be granted because: (1) Viox did not owe Plaintiff a legal duty as alleged; (2) any duty that existed was discharged as a matter of law; and (3) any alleged breach of duty was not a proximate cause of Plaintiff's injury.

---

[3] Count I of the First Amended Complaint alleged negligence against only U.S. Bank, which has been dismissed as a defendant.

8

## A. **Existence of Duty**

### 1. Contractual Duty

Plaintiff acknowledges that Viox did not possess or control the premises, and therefore Defendant has no duty under a premises liability theory. The parties' dispute relates solely to whether Viox had a duty imposed by its contract with the bank.

Whether or not a duty exists is a question of law. *See Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004) (citations omitted). In cases where duty is founded in a contract, "the extent of that duty is defined by the terms of the contract itself." *Smith v. MHI Injection Molding Mach., Inc.*, No. 10 C 8276, 2014 WL 1516592, at *4 (N.D. Ill. Apr. 18, 2014); *see Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952, 959 (Ill. App. Ct. 2001) ("A defendant is not liable under a negligence theory for failure to perform acts outside the scope of the contract."). "[I]t has long been the law in Illinois that a plaintiff who is not a party to a contract may sue under it only if the parties have affirmatively expressed by the terms of the contract itself an intent that the would-be plaintiff is a direct (and not merely incidental) beneficiary of that contract." *Smith*, 2014 WL 1516592, at *4.

Viox argues that its contract was limited to minor repairs, and certain items such as carpet repair and replacement were outside the scope of work and were instead contracted to another vendor. Viox further maintains that it did not place the rug on the carpet, and removing a rug placed by the bank for its own promotional purposes was outside the scope of the contract. Finally, Viox denies

9

that it knew the rug may have constituted a trip hazard, as there were no prior complaints or incidents with respect to the rug.

Plaintiff responds that the contract's references to "[r]emedy[ing] any defect that may create a safety hazard [with regard to flooring]" and to ensuring that the "[c]arpeting presents no tripping or safety hazard" created a duty on the part of Viox to correct any defect that may create a safety hazard. Plaintiff argues that the fact that Meza once glued the carpet down establishes that the contract required Viox to do more than report and notify on the condition of the carpet.

Plaintiff's citations to the contract, while not inaccurate, do not establish that Viox had a contractual duty to her to repair the carpet. *See St. Paul Mercury Ins. v. Aargus Sec. Sys., Inc.*, 2 N.E.3d 458, 564 (Ill. App. Ct. 2013) ("[Plaintiff's] argument is premised on an improper review of isolated terms in the contract as opposed to viewing the contract in its entirety."). The cited portions refer to specific Services that Viox was to provide to U.S. Bank. Elsewhere, the contract states that the quality and quantity of the specified Services are defined by Service Levels, which reflect U.S. Bank's service requirements, and the contract provided that Viox was to "[w]ork with U.S. Bank to identify and define appropriate and measurable service levels" for the Services listed. (Pl.'s Ex. 4, at 4.) "Condition service levels" are defined as those "conditions or operating parameters at which specified assets or areas are to be kept (and restored when they fall out of spec)" and include categories such as functionality and cleanliness or appearance of assets. (*Id.*) "Incident service levels" are "specific events that are to be avoided (and remedied when they occur)"

10

and include "safety incidents." (*Id.*) The contract goes on to provide that Viox was to "Communicate with designated U.S. Bank Personnel regarding the condition of Facilities, quality of Services, and any changes desired in current or future service levels." (*Id.* at 5.)

Plaintiff's reading of the contract establishes an absolute duty on the part of Viox to repair or replace carpet to prevent safety hazards. But because the Service Levels were expressly left to be defined by the parties to the contract, the testimony of Viox and U.S. Bank employees is highly probative as to the contract's terms in relation to the required Service Level for carpet repair. All of the testimony is consistent that repair or replacement was not within the Service Level for flooring-related issues, and therefore it was not within the scope of the contract. The contract therefore imposed no duty on Viox to repair or replace the carpet or to move the rug.

        2.    <u>Voluntary Undertaking</u>

Defendant also argues that Plaintiff cannot establish a duty to her under the "voluntary undertaking" theory of liability, by which "a party to a contract may be liable in tort to a third party who otherwise has no enforceable rights under the contract." *Jakubowski v. Alden-Bennett Constr. Co.*, 763 N.E.2d 790, 799 (Ill. App. Ct. 2002). A party may be liable for harm resulting from a voluntary undertaking if: "(1) a party undertakes to do something and then fails to exercise reasonable care in a way that increases a third party's risk of harm; (2) undertakes to perform a duty that a different party was obligated to perform and then negligently fulfills its

11

duty; or (3) a third party relies to its detriment on the fact that a duty has been voluntarily undertaken." *LM* ex rel. *KM v. United States*, 344 F.3d 695, 701 (7th Cir. 2003) (citing Restatement (Second) of Torts § 324A)); *see also St. Paul Mercury Ins.*, 2 N.E.3d at 563 ("The voluntary undertaking theory is to be construed narrowly and the duty of care is limited to the extent of the voluntary undertaking.").

The Court agrees with Viox that it is not liable under the voluntary undertaking theory. Plaintiff consistently has argued that Viox failed to notify or remedy the trip hazard, but nowhere in the record is there any suggestion that by its actions, Viox increased the risk of harm. Viox did not create the carpet tear, it did not tape the tear, and it did not place the rug over the tear. Moreover, Plaintiff does not argue that Meza's efforts to glue the carpet in June 2010 somehow increased the trip hazard.

Second, there is no evidence from which a jury could find that Viox voluntarily undertook to perform U.S. Bank's duty with regard to Plaintiff's safety. There is no evidence or testimony that Viox had the power, without the bank's authorization, to make the changes or repairs Plaintiff claims it should have. To the contrary, the evidence in the record demonstrates that at all times, U.S. Bank retained the responsibility over the entirety of the premises. *See Chelkova v. Southland Corp.*, 771 N.E.2d 1100, 1106-07 (Ill. App. Ct. 2002) (finding no voluntary undertaking by franchisor with regard to a store's security measures when its recommendations were not mandatory); *Castro v. Brown's Chicken &*

*Pasta, Inc.*, 732 N.E.2d 37, 44 (Ill. App. Ct. 2000) (granting summary judgment where defendant franchisor did not control the store's day-to-day operations and did not confirm whether the store followed its security recommendations).

Finally, Plaintiff alleges that Viox was negligent in failing to act, not that Viox performed any particular action negligently. According to Plaintiff, Viox was negligent in failing to repair the carpet or remove the rug, and Alcozer negligently performed the January 14 inspection by failing to note the existence of a floor mat, which was a trip hazard, on top of torn and taped carpet, which was also a trip hazard. Cases of nonfeasance, or "a failure by omission to perform the voluntary undertaking," as opposed to misfeasance, require a plaintiff to show that she relied on the defendant's actions. *Buerkett v. Ill. Power Co.*, 893 N.E.2d 702, 714 (Ill. App. Ct. 2008) (comparing nonfeasance with misfeasance, whereby "a plaintiff may recover if he relied on the volunteer's performance or if the volunteer's performance increased the risk of harm to plaintiff"). Plaintiff has pointed to no evidence in the record demonstrating that she relied on Viox's actions in maintaining the carpet.

### B. <u>Breach of Duty</u>

Defendant next argues that the only duty Viox arguably had in relation to bank invitees was to inspect the bank for maintenance issues, and it fulfilled that duty. First, Viox did notify the bank on a number of occasions about the carpet's condition and the need for repair or replacement. Second, Viox contends that it had no ongoing duty under the contract to evaluate the condition of the carpet or rug between January 14, when Alcozer did not notice any visible carpet issues, and

13

February 5, the date Plaintiff fell. The January 19 work order submitted by Light was assigned to Heatherly, not Viox, and it was closed without any information related to what action was taken.

Plaintiff argues that Viox breached its duty to her on January 14, 2011, when Alcozer failed to notify the bank of the alleged trip hazard or to remedy the hazard by removing the rug and gluing the carpet under the mat. In further support of her claim, Baroni points to the work order submitted on January 19, which stated that there was a big tear in the carpet that created a danger of falling.

As discussed above, Viox had no duty to Plaintiff to notify the bank about any issues with the rug or carpet, nor did it have a duty to repair the carpet. Moreover, the existence of the rug and torn carpet were known to the bank well before January 14, and there is no indication that Alcozer's inspection report caused anyone at U.S. Bank to think that the carpet had been repaired or otherwise reassured the bank that the rug was not a trip hazard. Thus, to the extent that Viox had any duty, it was not breached.

## CONCLUSION

For the foregoing reasons, Viox's Motion for Summary Judgment [Doc. No. 112] is granted.

SO ORDERED.                                         ENTERED:

DATE:   July 30, 2014   

_____
HON. MARIA VALDEZ
United States Magistrate Judge